1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SINGH, SINGH & TRAUBEN, LLP**
**MICHAEL A. TRAUBEN** (SBN: 277557)
  mtrauben@singhtraubenlaw.com
**DANIEL SILVERMAN** (SBN: 299317)
  dsilverman@singhtraubenlaw.com
400 S. Beverly Drive, Suite 240
Beverly Hills, California 90212
Tel:   310-856-9705
Fax:   888-734-3555

***Attorneys for Plaintiff***
JEFFREY WALKER II p/k/a J-DUB

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY WALKER II p/k/a J-DUB, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BLACKGROUND RECORDS, LLC, a Delaware limited liability company; BLACK FOUNTAIN PUBLISHING, INC, a Delaware corporation; BARRY HANKERSON, an individual; JOMO HANKERSON, an individual, and DOES 1-10 INCLUSIVE, <br><br> Defendants. | Case No.: 2:16-cv-4833 <br><br> **COMPLAINT for:** <br><br> **1. BREACH CONTRACT;** <br> **2. CONVERSION;** <br> **3. DECLARATORY RELIEF;** *and* <br> **4. ACCOUNTING** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, Jeffrey Walker II p/k/a J-Dub ("Walker" or "Plaintiff"), by and through his undersigned counsel, hereby files his Complaint against Defendants Blackground Records, LLC ("Blackground Records"), Black Fountain Publishing, Inc. ("Black Fountain"), Barry Hankerson, Jomo Hankerson (hereinafter collectively referred to as "Defendants"), and DOES 1-10 Inclusive, and in support thereof alleges as follows:

## NATURE OF ACTION

1. This is a civil action seeking damages for, among other things, breach of contract and conversion related to Plaintiff's production of numerous musical works, as well as declaratory relief and an accounting, arising from Defendants' multiple breaches of Defendants' concrete contractual obligations to pay substantial amounts owed to Plaintiff pursuant to the parties' written agreements, including a publishing and management agreement.

2. Defendants have continually failed and/or refused to comply with their contractual obligations owed to Plaintiff pursuant to the parties' agreements, including, but not limited to, the payment of substantial income and royalties derived from the exploitation of Plaintiff's musical works.

## THE PARTIES

3. Plaintiff Walker is an individual residing in Atlanta, Georgia.

4. Defendant Blackground Records is a Delaware limited liability company with its principal place of business in Los Angeles County, California.

5. Defendant Black Fountain Publishing is a Delaware Corporation, which conducts and carries out substantial and continuous business activities in the State of California.

6. Upon information and belief, Defendant Barry Hankerson is an individual residing in Los Angeles County, California.

7. Upon information and belief, Defendant Jomo Hankerson is an individual who has conducted and carries out substantial business activities in Los

Singh,
Singh &
Trauben,
LLP

Angeles County, California.

8.    Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

9.    Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendant is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were actually and proximately caused by their conduct. Plaintiff is informed and believes, and based thereon alleges, that some of the fictitiously named Defendants maintain some ownership right, title or interest in the Defendant companies and acted in their individual capacity to cause harm to Plaintiff.

10.    DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will ask leave of Court to amend this Complaint and insert the true names and capacities of said Defendants when the same has been ascertained.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a), as the amount in controversy is in excess of $75,000.00, and there is complete diversity of citizenship between the Plaintiff and all of the Defendants.

12.    This Court has personal jurisdiction over Defendants on the ground that all Defendants conduct or transact substantial business activities and contract to supply goods or services in this State, and Defendants have purposefully availed themselves of the jurisdiction of this Court by transacting business in this State.

13.    As set forth more fully below, the Defendants executed written agreements regarding acts to be performed in Los Angeles County, California.

14.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391, as a substantial part of the events and omissions giving rise to the claims herein

Singh,
Singh &
Trauben,
LLP

occurred in Los Angeles County.

## **FACTUAL ALLEGATIONS**

15.    Plaintiff is an established music producer who, among other things, creates, composes, writes, arranges, programs, mixes, remixes, routes and processes sound recordings and underlying compositions for various musical recording artists and record companies (hereinafter referred to as "Production Services").

16.    Upon information and belief, Barry Hankerson and his son Jomo Hankerson formed Blackground Records in 1993 to run a record label of the same name in Los Angeles, California.

17.    Upon information and belief, Blackground Records is owned and controlled by Barry Hankerson and Jomo Hankerson, with both such Defendants serving as officers of Blackground Records.

18.    Barry Hankerson is the uncle of the late R&B platinum-selling artist professionally known as Aaliyah.

19.    Upon information and belief, in or around 1993, Barry Hankerson signed Aaliyah as an artist to Blackground Records, who would become the staple artist, in terms of commercial success, of Blackground Records.

20.    Plaintiff, professionally known as "J-Dub", is a Grammy award-winning music producer and songwriter, who has, to date, produced and written numerous hit singles and RIAA-certified gold records in his career, primarily in the musical genres of hip-hop and R&B.

21.    Specifically, from approximately 1996 to 2000, Plaintiff was employed by Sean "Puffy" Combs, founder of Bad Boy Records, as an in-house producer, and was involved in the production of numerous hit singles during his tenure with Mr. Combs and Bad Boy Records.

22.    Cognizant of Plaintiff's reputation and success as a producer, in or around 2000, Barry Hankerson requested and ultimately persuaded Plaintiff to

Singh,
Singh &
Trauben,
LLP

leave his Atlanta, Georgia residence and move to Los Angeles to serve as the primary producer for Barry Hankerson and his son Jomo Hankerson's record label, Blackground Records.

23.     Shortly after Plaintiff's move to Los Angeles, in around 2000, Barry Hankerson persuaded Plaintiff to sign a management agreement with Blackground Records (the "Management Agreement").

24.     The Management Agreement provided that Blackground Records would render professional personal management services for the benefit of Plaintiff in connection with Plaintiff's music career in production and songwriting. In exchange, Blackground Records would have the right to receive Plaintiff's income directly during the term of the Management Agreement, retain ten percent (10%) of Plaintiff's income as a purported commission ("Commission"), and thereafter remit the remaining ninety (90%) to Plaintiff.

25.     Pursuant to the Management Agreement, Blackground Records was obligated to provide Plaintiff with detailed accounting statements of the income received on behalf of Plaintiff and the amount of the Commission, including the balance that Defendants would pay to Plaintiff in accompaniment of such accounting statements.

26.     Upon information and belief, the term of the Management Agreement was no longer than four (4) years, which means the Management Agreement expired in or around 2004, however, Defendants' contractual obligation and duty to remit to and pay Plaintiff all periodic payments owed to Plaintiff survive and continue to survive any expiration of the Management Agreement.[1]

27.     In around October 2000, Barry Hankerson likewise orchestrated the terms of the agreement with Plaintiff related to Blackground Records' handling

---

[1] Plaintiff does not currently have a copy in possession, custody or control, but will seek leave of Court to attach a copy of the agreement once obtained through discovery.

COMPLAINT

Singh,
Singh &
Trauben,
LLP

and administration of Plaintiff's songwriting and publishing, which resulted in Plaintiff signing a publishing agreement with Black Fountain (the "Black Fountain Publishing Agreement").

28.   Upon information and belief, Black Fountain is owned and controlled by Barry Hankerson and his son Jomo Hankerson.

29.   The Black Fountain Publishing Agreement provided that Black Fountain would exclusively administer, and as consideration own, by virtue of assignment, a certain percentage of the publishing of musical compositions written by Plaintiff.

30.   Pursuant to the Black Fountain Publishing Agreement, Black Fountain promised to pay Plaintiff a Two Hundred Thousand Dollar ($200,000.00) advance (the "Advance"). To date, Plaintiff has only received $100,000.00 of the promised Advance.

31.   In addition, the Black Fountain Publishing Agreement required Black Fountain to render accounting statements, with accompanying payment of Plaintiff's share as the writer, for all publishing income received by Black Fountain in connection with Plaintiff's compositions.

32.   However, notwithstanding that Black Fountain has, for more than a decade, consistently received, and continues to receive, significant publishing income in connection with Plaintiff's songs, Black Fountain has not provided Plaintiff with a single accounting statement.

33.   Upon information and belief, subsequent to the execution of the Black Fountain Publishing Agreement, Black Fountain entered into an agreement with EMI Music Publishing ("EMI") whereby EMI would handle the administration of the publishing of Plaintiff's song catalog, including but not limited to collecting publishing fees, income, and royalties on behalf of Plaintiff and Black Fountain, and issuing payments for Plaintiff's writer's share therein, as well as issuing accounting statements.

Singh,
Singh &
Trauben,
LLP

COMPLAINT

34. From the time of the Management Agreement and Black Fountain Publishing Agreement, Barry Hankerson advised and coordinated work for Plaintiff through Blackground Records with artists signed to Blackground Records, which notably included, Aaliyah and the artist professionally known as Tank, each prominent R&B artists at the time.

35. In particular, in 2001, Plaintiff entered into producer agreements with Blackground Records for each of the master recordings entitled "Refuse" and "What If" for Aaliyah's self-titled album *Aaliyah*, and "Slowly" and "Bounce and Grind" for Tank's debut album *Force of Nature*, as well as Tank's single entitled "Freaky", which was released by Blackground Records prior to the release of *Force of Nature*, (each collectively the "J-DUB Productions"), in connection with Plaintiff's production services for the J-DUB Productions (the producer agreements for each of the J-DUB Productions are hereinafter the "Producer Agreements" or individually a "Producer Agreement").

36. For each of the J-DUB Productions, Plaintiff wrote and was credited with ownership of 50% of the underlying musical compositions (hereinafter the "J-DUB Compositions").

37. Pursuant to each of the Producer Agreements, Blackground Records agreed to pay Plaintiff a record royalty of four percent (4%) and render periodic accounting statements to Plaintiff to be accompanied by periodic royalty payments to Plaintiff.

38. The Producer Agreements also set forth the manner in which Plaintiff would be paid "mechanical royalties", for his writer's share of the underlying J-DUB Compositions, stemming from the sale of records embodying the J-DUB Compositions.

39. In late-August 2001, Aaliyah was tragically killed in an airplane crash. Shortly thereafter, Plaintiff ceased working with Blackground Records and moved back to Georgia.

Singh,
Singh &
Trauben,
LLP

40.     From about 2003 until the present, Plaintiff has not received a *single* accounting statement or royalty payment from Blackground Records, whether in its capacity as a record label contractually required to pay its producer - Plaintiff, under the Producer Agreements, or in its capacity as Plaintiff's manager, required to account to Plaintiff and issue payments received on behalf of Plaintiff (less its Commission).

41.     Further, from approximately 2003 until the present, Plaintiff did not receive a single accounting statement from Black Fountain, its administrator EMI, or any of the Defendants in connection with Plaintiff's publishing income stemming from the J-DUB Compositions.

42.     This is notwithstanding the fact that, in the United States alone, the album *Aaliyah* spent 68 weeks on the *Billboard* 200 and, by December 2009, had sold 2.6 million copies.

43.     Similarly, Tank's *Force of Nature* debuted at number one on Billboard's Top R&B/Hip-Hop Albums chart and debuted at number seven on the Billboard 200.

44.     Upon information and belief, record sales and exploitations of the J-DUB Productions have accrued, and continue to accrue, substantial royalties, which sales and exploitations likewise accrued, and continue to accrue, significant royalties for the underlying J-DUB Compositions.

45.     However, while Defendants unilaterally reaped the benefits and income from Plaintiff's J-DUB Compositions and J-DUB Productions, Defendants failed to disclose or account to Plaintiff for such income and refused to make any royalty payments to Plaintiff, all in clear violation of the Producer Agreements, Black Fountain Publishing Agreement, and, to the extent it was still active, the

COMPLAINT

Singh,
Singh &
Trauben,
LLP

Management Agreement.[2]

46.    Upon information and belief, in or around June 2012, Reservoir Media Management, Inc. ("Reservoir Media") entered into a "Composition and Master Co-Publishing and Administration Agreement" with Defendant Barry Hankerson, Defendant Black Fountain, Defendant Blackground Records, as well as Black Fountain, Inc., Blackground Music, Inc., Blackground Enterprises, Inc., Barry & Sons, Inc., Future Sound Entertainment LLC and Blackground Entertainment, Inc. (the "Reservoir Media Agreement"). Black Fountain, Inc., Blackground Music, Inc., Blackground Enterprises, Inc., Barry & Sons, Inc., Future Sound Entertainment LLC, Blackground Entertainment, Inc., Defendant Barry Hankerson, Defendant Black Fountain, and Defendant Blackground Records are hereinafter collectively referred to as the "Hankerson Entities".

47.    Each of the Hankerson Entities, as parties to the Reservoir Media Agreement, were addressed to the "attention" of Jomo Hankerson.

48.    Upon information and belief, each of the Hankerson Entities are owned and controlled, in whole or in majority part, by Barry Hankerson and/or Jomo Hankerson.

49.    Upon information and belief, pursuant to the Reservoir Media Agreement, the Barry Hankerson and the Hankerson Entities assigned certain rights as administrator of, among other music catalogs, the J-DUB Compositions, and assigned Reservoir Media fifty percent (50%) of its rights, title and interest, including but not limited to the copyrights, in and to, among other music catalogs, the J-DUB Compositions. In addition, Barry Hankerson and the Hankerson Entities

---

[2]  After the Management Agreement expired in or about 2004, Defendants Blackground Records, Barry Hankerson and Jomo Hankerson had no right or authority, contractually or otherwise, to receive money on behalf of Plaintiff, but nonetheless continued to do so while converting all of that money by failure to remit its receipts to Plaintiff.

Singh, Singh & Trauben, LLP

assigned and granted Reservoir Media administration rights in and to, among other sound recordings, the J-DUB Productions.

50.     Upon information and belief, based upon the Reservoir Media Agreement, Reservoir Media assumed joint responsibility for accounting for all sound recording royalties and publishing income to, among others, Plaintiff.

51.     In addition, upon information and belief, by virtue of the Reservoir Media Agreement, Reservoir Media jointly assumed certain obligations to Plaintiff encompassed under the Producer Agreements (by and through Blackground Records) and the Black Fountain Publishing Agreement (by and through Black Fountain).

52.     Plaintiff had and continues to have an ongoing expectation that Defendants would remit royalty statements and royalty checks to him, arising from domestic and international business transactions, including purchases, use, synchronization, performance and other exploitations of the J-DUB Compositions and the J-DUB Productions.

53.     In or around July 2012, the Internal Revenue Service ("IRS") notified Plaintiff that he owed taxes on approximately $262,580.00 of income, which had been reported as 1099 income, primarily issued from EMI for royalty payments from 2004 to 2011. Plaintiff was incredulous to hear this as Plaintiff has never received any of this reported income.

54.     Upon further investigation, through Form-1099 statements furnished by the IRS as well as through inquiries with EMI, Plaintiff recently discovered that such monies were actually sent to Barry and Jomo Hankerson, or sometimes only Jomo Hankerson, on behalf of Plaintiff, and Barry and Jomo Hankerson never remitted any of that money to Plaintiff, instead retaining all such funds for themselves.

55.     Notably, the money earned by and payable to Plaintiff, which was actually sent to Barry Hankerson and/or Jomo Hankerson, constituted the

Singh, Singh & Trauben, LLP

COMPLAINT

Plaintiff's share from such publishing, as opposed to the publisher's share to which Black Fountain was actually entitled and, upon information and belief, already paid directly by EMI.

56.     Upon information and belief, Black Fountain, or Barry Hankerson and/or Jomo Hankerson, received its publisher's share from the publishing income earned from the J-DUB Compositions, such that any of the money Barry Hankerson or Jomo Hankerson received in lieu of Plaintiff was in addition to the publisher's share Defendants had already received.

57.     Specifically, according to a letter from EMI to Plaintiff on May 3, 2013, as of 2013, Plaintiff had earned $195,062.00 since EMI took over the administration of Plaintiff's account, and of that sum, checks totaling $178,296.88 were received and cashed by Blackground Records, Barry Hankerson or Jomo Hankerson. A true and correct copy of this letter is attached hereto as Exhibit "A".

58.     Upon information and belief, on or around November 2005, EMI paid Barry Hankerson and Jomo Hankerson $92,419.40 of Plaintiff's earnings.

59.     Upon further investigation, Plaintiff subsequently discovered that a royalty check from EMI for $85,877.48, made out to Plaintiff, had been endorsed by an individual named Keisha Coleman, upon information and belief an employee of Jomo Hankerson's, who also forged Plaintiff's signature as a co-endorser of the check. Notably, the check was sent to Plaintiff but to the care of "Blackground Entertainment", one of the Hankerson Entities. A true and correct copy of this check is attached hereto as Exhibit "B".

60.     Upon information and belief, Defendants Blackground Records, Black Fountain, Barry Hankerson and Jomo Hankerson received and cashed checks from EMI, which were intended for Plaintiff.

61.     Furthermore, by virtue of Management Agreement expiring in approximately 2004, Defendants Blackground Records, Barry Hankerson and Jomo Hankerson had no right to receive or keep *any* portion of the income earned

COMPLAINT

Singh,
Singh &
Trauben,
LLP

by and payable to Plaintiff, let alone a ten percent Commission. Accordingly, said Defendants misappropriated and converted the income earned by and payable to Plaintiff from EMI.

62.     Plaintiff's wage and income transcripts ("Income Transcripts") from 2004 to 2010, which list EMI as the payor, indicate Plaintiff is missing royalties in the amount of $438,050.

63.     Notwithstanding that Plaintiff fulfilled his obligations pursuant to the Management Agreement, the Producer Agreements, and the Black Fountain Publishing Agreement, Defendants nonetheless have refused to compensate Plaintiff and/or perform any of their duties, including, but not limited to, providing accounting statements to Plaintiff, in accordance with the terms of said agreements.

64.     Accordingly, as a result of Defendants' past and continuing breaches of the Management Agreement, the Producer Agreements, and the Black Fountain Publishing Agreement, substantial sums remain outstanding and are past due, while further income owed to Plaintiff continues to accrue that Defendants have unilaterally withheld and/or refused to pay Plaintiff.

65.     Plaintiff has notified Defendants of the missing royalty payments and improper accounting, or a lack thereof, by Defendants, and attempted, to no avail, to resolve these continuing breaches by Defendants.

66.     Ultimately, Defendants have failed and refused to cure these breaches and continue to withhold these continuing royalties owed to Plaintiff, including the contractual rights of Plaintiff in violation of the Management Agreement, the Producer Agreements, and the Black Fountain Publishing Agreement.

67.     Moreover, as a direct consequence of Defendants' ongoing breaches of the periodic and continuing payments owed under the Management Agreement, the Producer Agreements, and the Black Fountain Publishing Agreement, and undisclosed misappropriation of Plaintiff's royalty income, the IRS has, as of around March 2014, began levying Plaintiff's sound recording income and public

COMPLAINT

Singh,
Singh &
Trauben,
LLP

performance income, all of which Defendants would have no entitlement to by virtue of any agreement.

## DEFENDANTS' ALTER EGO RELATIONSHIP

68.   Plaintiff is informed and believes that Defendants Blackground Records and Black Fountain are, and at all times mentioned herein were, mere shells without sufficient capital and assets and conceived, intended and used by Defendants Barry Hankerson and Jomo Hankerson as a device to avoid liability.

69.   Further, while not all named as defendants herein, Plaintiff is informed and believes that Barry Hankerson and Jomo Hankerson utilize each of the Hankerson Entities in order to limit their assets and liability with respect to their commercial endeavors in the music recording and publishing industry, including, but not limited to, with Blackground Records, LLC, Black Fountain Publishing, Inc., Black Fountain, Inc., Blackground Music, Inc., Blackground Enterprises, Inc., Barry & Sons, Inc., Future Sound Entertainment LLC and Blackground Entertainment, Inc.

70.   Specifically, upon information and belief, Defendants Blackground Records and Black Fountain are the "alter egos" of Barry Hankerson and Jomo Hankerson, and there exists, and at all times mentioned herein existed, a unity of interest and ownership between Defendants Barry Hankerson and Jomo Hankerson, on the one hand, and each of Defendants Blackground Records and Black Fountain, interchangeably, on the other hand, such that any individuality and separateness has ceased and that Barry Hankerson and/or Jomo Hankerson controls or controlled the business and activities of each of Defendants Blackground Records and Black Fountain.

71.   Upon information and belief, Defendants Blackground Records and Black Fountain, in addition to the non-defendant Hankerson Entities, were and are mere shells, instrumentalities and conduits through which Barry Hankerson and Jomo Hankerson carried on business in the corporate name, exactly as they would

COMPLAINT

Singh,
Singh &
Trauben,
LLP

have had there been no corporate entity at all, exercising complete control and dominance over such businesses to the point where any individuality or separateness between the Hankerson Entities and Barry Hankerson and Jomo Hankerson does not, and at all times herein mentioned, did not, exist.

72.   In addition, upon information and belief, Barry Hankerson and Jomo Hankerson further comingled and continue to comingle their assets with Blackground Records and Black Fountain, controlled and continue to control Blackground Records and Black Fountain's finances in their entirety, treated and treat Blackground Records and Black Fountain's assets as their own, and further engaged and engage in such zealous controlling conduct towards Blackground Records and Black Fountain that Blackground Records and Black Fountain were and remain nothing more than a mere instrumentality of Barry Hankerson and Jomo Hankerson.

73.   Plaintiff is informed and believes and thereon alleges that Defendants Blackground Records and Black Fountain are unable to satisfy any judgment against them.

74.   Adherence to the fiction of the separate existence of Blackground Records and Black Fountain as entities separate and distinct from Barry Hankerson and Jomo Hankerson would permit an abuse of the corporate privilege and would sanction fraud or promote injustice in that Barry Hankerson and Jomo Hankerson might escape liability for the causes of action set out herein.

75.   Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants Barry Hankerson, Jomo Hankerson, Blackground Records and Black Fountain acted in concert and conspired with or aided and abetted each other to do the acts complained of in this Complaint. Further, Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants Barry Hankerson, Jomo Hankerson, Blackground Records and Black Fountain acted as an agent for the other, and, as

Singh, Singh & Trauben, LLP

such, were at all times mentioned herein acting within the course and scope of such agency.

## COUNT I
## BREACH OF CONTRACT
### (As against all Defendants)

76.  Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 75 as if fully set forth herein.

77.  In or around 2000, Barry Hankerson induced Plaintiff to enter into a binding Management Agreement with Blackground Records outlining specific contractual obligations of Blackground Records, its employees, agents, and assigns.

78.  Plaintiff has performed all of his obligations to Blackground Records under the terms and conditions of the Management Agreement.

79.  Blackground Records has breached the Management Agreement by failing to provide accounting statements and failing and continuing to fail to pay Plaintiff monies received by Blackground Records, or Barry Hankerson or Jomo Hankerson on behalf of Blackground Records, that was and remains owed and payable to Plaintiff.

80.  In addition, in around October 2000, Barry Hankerson induced Plaintiff to enter into the Black Fountain Publishing Agreement with Black Fountain, whereby Black Fountain would administer and collect royalties and publishing income from the J-DUB Compositions and, as consideration, own, by virtue of assignment, a certain percentage of the publishing of musical compositions written by Plaintiff.

81.  The Black Fountain Publishing Agreement required Black Fountain to provide accountings to Plaintiff of the publishing income accrued and pay Plaintiff his share of such income.

82.  In 2001, Plaintiff, separate from his Management Agreement with

COMPLAINT

Blackground Records, was induced to enter into the Producer Agreements with Blackground Records with respect to his music production services for the J-DUB Productions, which required Blackground Records, ostensibly acting as a record label rather than Plaintiff's manager, to pay Plaintiff a producer royalty of four percent on record sales for records embodying the J-DUB Productions, and provide Plaintiff periodic accounting statements of royalties accrued from each of the J-DUB Productions.

83.     Plaintiff has performed all of his obligations to Blackground Records under the terms and conditions of each of the Producer Agreements.

84.     Nonetheless, despite substantial sales of records embodying the J-DUB Productions, generating significant royalties payable to Plaintiff, Blackground Records has breached each of the Producer Agreements by failing to account to and failing and continuing to fail to pay Plaintiff *any* royalties that have accrued, and continue to further accrue, that are owed and payable to Plaintiff under the Producer Agreements.

85.     Moreover, by virtue of the Reservoir Media Agreement, Reservoir Media had assumed the obligations to Plaintiff encompassed under the Producer Agreements (by and through Blackground Records) and the Black Fountain Publishing Agreement (by and through Black Fountain).

86.     Plaintiff has performed all of his obligations under the terms and conditions of the Black Fountain Publishing Agreement.

87.     Nonetheless, from about 2003 until the present, Defendants have failed to account to and pay Plaintiff his share of the periodic continuing publishing income, pursuant to the Black Fountain Publishing Agreement, which Defendants unilaterally received on behalf of Plaintiff and unlawfully withheld, and continue to withhold, from Plaintiff, in unequivocal breach of the Black Fountain Publishing Agreement.

88.     As a direct result of publishing income and royalties accrued in

Singh,
Singh &
Trauben,
LLP

COMPLAINT

connection with the J-DUB Compositions, which have been unlawfully withheld and misappropriated by Defendants, in March 2014, the IRS began levying Plaintiff's income for his alleged failure to pay taxes on publishing income, when in fact, such income was never received by Plaintiff, instead being taken and retained by Defendants.

89.    As a direct and proximate result of Defendants' multiple breaches of the Management Agreement, Producer Agreements, and the Black Fountain Publishing Agreements, Plaintiff has suffered significant and extensive damages and economic losses, including, but not limited to, lost compensation and income being levied by the IRS.

90.    Accordingly, Plaintiff is entitled to actual and compensatory damages in an amount to be determined at trial, but not less than $500,000 plus prejudgment interest.

## COUNT II
## CONVERSION
### (As against all Defendants)

91.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

92.    Plaintiff was and remains the rightful owner of funds, specifically royalty payments totaling at least $438,050.00 from EMI.

93.    Upon information and belief, as of no later than January 1, 2005, the Management Agreement had expired.

94.    Accordingly, beyond approximately January 1, 2005, neither of Blackground Records, Barry Hankerson, nor Jomo Hankerson had any right to receive, let alone retain for themselves, monies earned by and otherwise owed to Plaintiff.

95.    Nonetheless, Defendants Blackground Records, Barry Hankerson, and Jomo Hankerson continued to direct third parties to pay said Defendants, and

COMPLAINT

Singh,
Singh &
Trauben,
LLP

continued to receive income, for monies earned and accrued by Plaintiff well beyond the expiration of the Management Agreement and Defendants' material breaches thereof.

96.     Defendants intentionally converted the entirety of Plaintiff's royalty payments and benefitted financially from such conversion.

97.     Plaintiff in no manner consented to Defendants' ongoing and continuous misappropriation of the checks.

98.     As a direct and proximate result of Defendants' conversion, Plaintiff has suffered economic damages.

99.     Plaintiff has been damaged in an amount to be determined at trial, but not less than an amount equal to $438,050.

**COUNT III**
**ACCOUNTING**
**(As against all Defendants)**

100.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 99 as if fully set forth herein.

101.   Upon information and belief, by their wrongful acts, Defendants have received and continue to receive periodic royalty payments, profits and revenue relating to Plaintiff's musical works and produced master recordings, including the J-DUB Compositions and J-DUB Productions.

102.   Accordingly, Plaintiff is entitled to a full accounting of all profits, revenue and royalty payments Defendants have received and continue to receive in connection with the Management Agreement, the Producer Agreements, the Black Fountain Publishing Agreement, and the J-DUB Compositions and J-DUB Productions.

**COUNT IV**
**DECLARATORY RELIEF**
**(As against all Defendants)**

103.   Plaintiff repeats and re-alleges each and every allegation contained in

Singh,
Singh &
Trauben,
LLP

paragraphs 1 through 102 as if fully set forth herein.

104.   Defendants have willfully, materially and unequivocally breached the Management Agreement, Producer Agreement, and the Black Fountain Publishing Agreement.

105.  Plaintiff has attempted numerous times to resolve Defendants' ongoing breaches to no avail.

106.   Accordingly, Plaintiff seeks a declaratory judgment of this Court with respect to the following: (i) Without limiting Plaintiff's damages and remedies requested pursuant to Counts I through III, declaring that the Management Agreement is deemed terminated, null and void; *and* (ii) without limiting Plaintiff's damages and remedies requested pursuant to Counts I through III, declaring that the Black Fountain Publishing Agreement is deemed terminated, null and void, and that all rights, title and interest which any of Defendants may claim to have in or to Plaintiff's writer or publisher share of any of the J-DUB Compositions, pursuant to the Black Fountain Publishing Agreement or, as applicable, the Reservoir Media Agreement, shall revert entirely to Plaintiff.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Jeffrey Walker II, p/k/a J-Dub, hereby respectfully requests that this Court enter a final judgment in his favor and as against all Defendants, jointly and severally, as follows:

1.    For damages in excess of Two Hundred Thousand ($200,000.00), including, but not limited to, compensatory damages, consequential damages, and incidental damages according to proof**.**

2.    That Defendants be ordered to furnish Plaintiff a complete and accurate accounting of all revenues, income, profits and royalty earned from the exploitation of the Management Agreement, the Producer Agreements, the Black Fountain Publishing Agreement, and the J-DUB Compositions and J-DUB

Singh,
Singh &
Trauben,
LLP

1   Productions.

2       3.    For an Order declaring that:

3             a.     The Management Agreement is deemed terminated, null and
4                    void; *and*

5             b.     The Black Fountain Publishing Agreement is deemed
6                    terminated, null and void, and that all rights, title and interest
7                    which any of Defendants may have in or to Plaintiff's writer or
8                    publisher share of any of the J-DUB Compositions, pursuant to
9                    the Black Fountain Publishing Agreement or as applicable, the
10                   Reservoir Media Agreement, shall revert entirely to Plaintiff;

11      4.    For litigation expenses and costs of suit;

12      5.    For prejudgment and post-judgment interest, as allowed by law; *and*

13      6.    For such other relief as the Court deems just and proper.

14                          **<u>DEMAND FOR TRIAL BY JURY</u>**

15          Plaintiff hereby demands a jury trial on all claims for relief triable by jury.

16   DATED: June 30, 2016                Respectfully submitted,

17

18                                       SINGH, SINGH & TRAUBEN, LLP
                                         MICHAEL TRAUBEN
19                                       DANIEL SILVERMAN

20

21                                       By: _____
                                             Michael Trauben
22

23                                       ***Attorneys for Plaintiff***
                                         JEFFREY WALKER II p/k/a J-DUB
24

25

26

27

28